NUMBER 13-07-627-CR



COURT OF APPEALS
 


THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


CARLOS ANDRES SEPULVEDA, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 27th District Court 

of Bell County, Texas

 


MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Rodriguez and Vela


Memorandum Opinion by Justice Vela



 A jury convicted appellant, Carlos Andres Sepulveda, of aggravated sexual assault
of a child and sentenced him to fifty years' imprisonment. Tex. Penal Code Ann. § 22.021
(Vernon Supp. 2008). In five issues, he argues (1) the trial court erred in denying his
requested instruction for a lesser-included offense, (2) the State erred in bolstering its
witnesses, (3) trial counsel was ineffective, and (4) the trial court erred in denying his
motion for a mistrial. We affirm.

I. Background


 Nine-year-old K.H. lived with her mother, R.H. On March 25, 2006, appellant came
to their home to repair a car. Afterwards, he, R.H., and K.H. went into the living room to
watch a movie. While watching the movie, R.H. was sitting in a rocking chair, and K.H. and
appellant were sitting on the couch. K.H. had her legs "propped up" on appellant's legs,
and she had a blanket covering her body. K.H. testified that appellant "start[ed] to rub my
thigh right there, and then like close to the end he put his hand in my underwear and
started playing around in there." By "playing around," she meant, "Like, touching me and
all that." When the prosecutor asked K.H. where appellant had touched her, she replied,
"In my vagina." When the prosecutor asked her, "What did he do with his finger, [K.H.]?",
she said, "He moved it around in there." In response to that answer, the prosecutor asked
her, "And are you talking about your vagina?". To this, she replied, "Yes, ma'am." K.H.
testified that after appellant left the house, she told her mother that appellant "was playing
around in my private."

 R.H. testified that when appellant left, K.H. told her that appellant had touched her
"In . . . [her] private." When the prosecutor asked R.H., "Did [K.H.] tell you what he
[appellant] did with his finger?", R.H. replied, "She told me that he had put his finger in her
vagina." When the prosecutor asked R.H., "She [K.H.] uses the word that he played
around down there. Is that what she told you?", R.H. answered, "Yes, ma'am." To clarify,
the prosecutor asked R.H.:

 Q. Whether she [K.H.] used those words or not, were you clear that what
this defendant had done is put his fingers in her vagina?


 A. Yes, ma'am.


 Q. That is what your daughter told you?


 A. Yes, ma'am.

 The day after the incident, K.H. was examined by Deborah Kleypas, a sexual
assault nurse examiner. Kleypas testified that: "[K.H.] told me that a guy had touched her
privates, and she--her front privates with his fingers. And when I am talking to children,
I also have a body diagram and she pointed to the genital area on the body diagram and
told me in that area." Kleypas performed a detailed genital exam on K.H. She testified that
K.H.'s "outside labia majora and inside were very red." When the prosecutor asked
Kleypas, "So inside the labia majora there was also redness.", she replied, "Yes, sir." Next,
the prosecutor asked her, "And was that, based on your training and experience, consistent
or inconsistent with a male inserting his fingers into her vagina?" She replied, "Her redness
could be consistent with her history about what happened." The prosecutor then asked
her, "So it was consistent with her story." She replied, "Yes, sir, it was."

 The defense rested without calling any witnesses.


II. Discussion


A. Lesser-Included Offense

 In his first issue, appellant argues the trial court erred in denying his request for a
jury charge instruction on the lesser-included offense of indecency with a child. (1) At the
charge conference, the trial court denied appellant's request for the lesser-included offense
of indecency.

 When evaluating charge error, we first determine whether there was error in the
charge. Almanza v. State, 686 S.W.2d 157, 174 (Tex. Crim. App. 1985) (op. on reh'g). 
If so, "the next step is to make an evidentiary review . . . as well as a review of any other
part of the record as a whole which may illuminate the actual, not just theoretical, harm to
the accused." Id.

 Under the code of criminal procedure, an offense is a lesser-included offense if: (1)
"it is established by proof of the same or less than all the facts required to establish the
commission of the offense charged"; (2) "it differs from the offense charged only in the
respect that a less serious injury or risk of injury to the same person, property, or public
interest suffices to establish its commission"; (3) "it differs from the offense charged only
in the respect that a less culpable mental state suffices to establish its commission"; or (4)
"it consists of an attempt to commit the offense charged or an otherwise included offense." 
Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon 2006). The court of criminal appeals has
clarified the method for determining whether the allegation of a greater offense includes
a lesser offense. See Hall v. State, 225 S.W.3d 524, 535-36 (Tex. Crim. App. 2007). The
Hall court phrased the issue as "whether 'the facts required' in Article 37.09(1) are
determined by the evidence adduced at trial, or whether the determination is a question
of law that can be answered before the trial begins by looking at the elements and facts
alleged in the charging instrument." Id. at 531. The Hall court held that the "pleadings"
approach is the sole test for determining in the first step whether a party may be entitled
to a lesser-included offense instruction. Id. at 535. In describing this "cognate-pleadings"
approach, the Hall court stated that a "court looks to the facts and elements as alleged in
the charging instrument, and not just to the statutory elements of the offense, to determine
whether there exists a lesser-included offense of the greater charged offense." Id. at 526. 
The availability of a lesser-included instruction in a given case depends on the second
step, whether there is some evidence adduced at trial to support such an instruction. Id.
at 535.

 The first step in the lesser-included-offense analysis, determining whether an
offense is a lesser-included offense of the alleged offense, is a question of law. Flores v.
State, 245 S.W.3d 432, 439 (Tex. Crim. App. 2008). It does not depend on the evidence
to be produced at trial. Id. It may be, and to provide notice to the defendant must be,
capable of being performed before trial by comparing the elements of the offense as they
are alleged in the indictment or information with the elements of the potential lesser-included offense. Hall. 225 S.W.3d at 535-36.

 The evidence adduced at trial remains an important part of the trial court's decision
whether to charge the jury on lesser-included offenses. Id. at 536. The second step in the
analysis asks whether there is evidence that supports giving the instruction to the jury. Id. 
A defendant is entitled to an instruction on a lesser-included offense when the proof for the
offense charged includes the proof necessary to establish the lesser-included offense and
there is "some evidence" in the record that would permit a jury rationally to find that if the
defendant is guilty, he or she is guilty only of the lesser-included offense. Id. at 536. In
this step of the analysis, anything more than a scintilla of evidence may be sufficient to
entitle a defendant to a lesser charge. Id. In other words, the evidence must establish the
lesser-included offense as "'a valid, rational alternative to the charged offense.'" Id. at 536
(quoting Forest v. State, 989 S.W.2d 365, 367 (Tex. Crim. App. 1999)).

 Applying the first step of the lesser-included-offense analysis, we do not consider
the evidence that was presented at trial. Id. Instead, we consider only the statutory
elements of aggravated sexual assault of a child as they were modified by the particular
allegations in the indictment. See id. In this case, the indictment alleged, in relevant part: 
(1) "Defendant"; (2) "intentionally or knowingly"; (3) "cause[d] the penetration of the female
sexual organ of [K.H.]"; (4) "a child who was then and there younger than 14 years of age
and not the spouse of the defendant"; (5) "by placing Carlos Andres Sepulveda's finger in
[K.H.'s] female sexual organ." We now compare these charged elements with the
elements of the offense of indecency with a child that could be included in that offense. 
Id. Section 21.11-Indecency With a Child-provides, in relevant part:

 (a) A person commits an offense if, with a child younger than 17
years and not the person's spouse, whether the child is of the same
or opposite sex, the person:


 (1) engages in sexual contact with the child or causes the child to
engage in sexual contact; or


 (2) with intent to arouse or gratify the sexual desire of any person:


 (A) exposes the person's anus or any part of the person's
genitals, knowing the child is present; or


 (B) causes the child to expose the child's anus or any part of
the child's genitals.


 * * *


 (c) In this section, "sexual contact" means the following acts, if
committed with the intent to arouse or gratify the sexual desire of any
person:


 (1) any touching by a person, including touching through clothing, of
the anus, breast, or any part of the genitals of a child; or 


 (2) any touching of any part of the body of a child, including touching
through clothing, with the anus, breast, or any part of the genitals of
a person.


Tex. Penal Code Ann. § 21.11(a) (Vernon 2003). In this case, the offense of indecency
with a child contains one element that was not explicitly charged in this indictment: the
intent to arouse or gratify the sexual desire of any person. See Tex. Penal Code Ann. §§
21.01(2), (2) 21.11(a)(1) (Vernon 2003 & Supp. 2008).

 The elements of aggravated sexual assault of a child as alleged in the indictment
do not conclusively establish an intent by appellant to arouse or gratify the sexual desire
of any person. The crime as alleged could have been committed solely with an intent to
violate K.H., without any concomitant intent to satisfy a sexual desire. The legislature has
classified the offense of aggravated sexual assault of a child not as a sexual offense but
as an assaultive one. Compare Tex. Penal Code Ann. § 21.11 (Vernon 2003) (classifying
indecency with a child among the sexual offenses against the person), with § 22.021
(Vernon Supp. 2008) (classifying aggravated sexual assault among the assaultive offenses
against the person). Without looking at the evidence in the case, it is impossible to say
that intent to arouse or gratify the sexual desire of a person may necessarily be deduced
from the alleged act of appellant penetrating K.H.'s female sexual organ with his finger.

 We then ask the question that article 37.09(1) poses: are the elements of the
purported lesser offense "established by proof of the same or less than all the facts
required to establish the commission of the offense charged[?]" Tex. Code Crim. Proc.
Ann. art. 37.09(1) (Vernon 2006). We hold that in the instant case, the elements required
to prove indecency with a child are not the same as, or less than those required to prove
aggravated sexual assault of a child as alleged in the indictment. Therefore, appellant's
requested instruction does not satisfy the first prong of the Hall test.

 Even assuming that under this indictment, indecency with a child is a lesser-included
offense of aggravated sexual assault of a child, we do not find sufficient evidence in the
record to support the instruction. In the second step of a lesser-included-offense analysis,
we must examine the evidence adduced at trial to determine if there was some evidence
to support instructing the jury on the lesser-included offense. Hall, 225 S.W.3d at 536. 
There is no evidence in the record that would permit a jury rationally to find appellant was
guilty only of indecency with a child. When the prosecutor asked K.H., "Where was he
[appellant] touching you?", she replied, "In my vagina." When the prosecutor asked, "What
did he [appellant] do with his finger, [K.H.]?", she answered, "He moved it around in there." 
When the prosecutor asked her, "And are you talking about your vagina?", she said, "Yes,
ma'am." R.H. testified that K.H. said that appellant touched her "In my private." When the
prosecutor asked R.H., "Did [K.H.] tell you what he [appellant] did with his finger?", R.H.
replied, "She told me that he had put his finger in her vagina." Kleypas testified that she
found "redness" inside K.H.'s labia majora. When the prosecutor asked Kleypas, "And was
that [redness], based on your training and experience, consistent or inconsistent with a
male inserting his fingers into her [K.H.'s] vagina?", she replied, "Her redness could be
consistent with her history about what happened."

 Appellant calls our attention to K.H.'s testimony that he "started playing around in
there." When the prosecutor asked K.H. what she meant by "playing around," she said,
"Like touching me and all that." Appellant also calls our attention to the testimony of
Kleypas, who testified that K.H. told her that "a guy had touched her privates, and she--her
front privates with his fingers." These statements, however, are not evidence appellant is
guilty only of indecency with a child. Furthermore, these statements are not evidence that
penetration did not occur. Case law has established that the slightest penetration of the
female sexual organ is sufficient to prove penetration even though the vagina is not
entered. See Vernon v. State, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992) (holding that
slightest penetration of female sexual organ is sufficient to prove penetration even though
vagina not entered); Sherbert v. State, 531 S.W.2d 636, 637 (Tex. Crim. App. 1976). 
Therefore, the testimony relied upon by appellant is not such as would cause a jury to
rationally conclude that appellant only touched K.H.'s genitals, but did not actually put his
finger in her female sexual organ. Appellant has not demonstrated that there is any
evidence in the record that, if he is guilty, he is guilty of only indecency with a child and not
aggravated sexual assault of a child. We conclude appellant was not entitled to an
instruction on the lesser-included offense. Thus, we hold that appellant has not offered
more than a scintilla of evidence in favor of the requested instruction, and therefore was
not entitled to a lesser charge on indecency with a child under the second prong of Hall. 
Issue one is overruled.

B. Improper Bolstering

 In his second issue, appellant argues the prosecutor committed error in bolstering
the testimony of the State's witnesses during its case-in-chief and during its guilt-innocence
closing argument. "Bolstering occurs when one party introduces evidence for the purpose
of adding credence or weight to earlier unimpeached evidence offered by that same party." 
Rousseau v. State, 855 S.W.2d 666, 681 (Tex. Crim. App. 1993) (citing Guerra v. State,
771 S.W.2d 453, 474 (Tex. Crim. App. 1988)); Mumphrey v. State, 155 S.W.3d 651, 656
(Tex. App.-Texarkana 2005, pet. ref'd). In Cohn v. State, the court of criminal appeals
defined bolstering as:

 any evidence the sole purpose of which is to convince the factfinder that a
particular witness or source of evidence is worthy of credit, without
substantively contributing "to make the existence of [a] fact that is of
consequence to the determination of the action more or less probable than
it would be without the evidence." Accordingly, evidence that corroborates
another witness' story or enhances inferences to be drawn from another
source of evidence, in the sense that it has an incrementally further tendency
to establish a fact of consequence, should not be considered "bolstering."


Cohn v. State, 849 S.W.2d 817, 819-20 (Tex. Crim. App. 1993) (emphasis in original,
citation omitted). "Regardless of whether a witness is impeached, additional evidence to
the same effect is not 'bolstering' if . . . it makes any substantive contribution or
incrementally tends to further a fact of consequence." Briones v. State, 12 S.W.3d 126,
129 (Tex. App.-Fort Worth 1999, no pet.). 

 1. Whether Improper Bolstering Occurred During The Case-In-Chief


 Appellant argues the prosecution called Officer Reese Davis and R.H. who "were
used to bolster the testimony of other witnesses." We will separately discuss the testimony
of Officer Davis and R.H. 

 a. Testimony of Officer Davis

 Appellant directs our attention to several pages of Officer Davis's testimony and
argues the prosecution used this testimony to improperly bolster the testimony of other
witnesses. Officer Davis was the lead investigator in this case and had attended "kinesic
interview schools" sponsored by the Killeen Police Department. He testified in detail about
how a criminal case is investigated before it is presented to the district attorney's office. 
When the prosecutor asked Officer Davis, "In your investigations do you take--especially
investigations of this sort, do you take extreme measures to make sure that you are as
thorough and accurate as you can be?", he replied, "Yes, sir." At this point, counsel
objected that the prosecutor was "trying to bolster his own witness with all those words like
'extreme measures,' et cetera." The trial court sustained the objection. Officer Davis
testified that in this case, he: (1) reviewed the statement which R.H. wrote for K.H.; (2)
reviewed the sexual assault nurse examiner's report; and (3) reviewed Officer April
Johnson's video-taped interview (3) of K.H. With respect to what Officer Davis heard and saw
in the video-taped interview, he answered, "No, sir," when the prosecutor asked him: (1)
"At any point during the interview of [K.H.] on the tape did--was she led in any way?"; (2)
"Did you hear, based on your training and experience, that she had some kind of agenda
other than telling what happened to her?"; and (3) "Did she exhibit any bias against the
defendant other than for what he did on March 25, 2006?". When the prosecutor asked
him, "Did she appear to, based on your training and experience, act appropriately during
that interview?", he replied, "Yes, sir."

 After questioning Officer Davis about the video-taped interview, the prosecutor
asked him, "Did you go into her [K.H.'s] background with her mother?" and "[D]uring your
investigation did she indicate any other suspect than this defendant?". Officer Davis
replied, "No, sir" to both questions.

 Our review of the record does not indicate that K.H.'s testimony stood unimpeached. 
Defense counsel cross-examined K.H. about her claim that appellant assaulted her while
she, R.H., and appellant were in the living room watching a movie. (4) Counsel also cross-examined K.H. about her motive for accusing appellant of the assault. (5) Thus, Officer
Davis's testimony was not impermissible bolstering because before he testified, defense
counsel had impeached K.H. (1) about how appellant could have sexually assaulted her
while her mother was present in the same room, and (2) by insinuating that the reason K.H.
accused appellant of sexually assaulting her was because appellant had scolded her. 
Thus, the State was entitled to rehabilitate K.H.'s credibility, and Officer Davis's testimony
was not improper bolstering. See Skeen v. State, 96 S.W.3d 567, 578 (Tex.
App.-Texarkana 2002, pet. ref'd) ("Testimony elicited to rebut prior impeachments by
opposing counsel is not considered improper bolstering."). 




 Appellant also calls our attention to Officer Davis's testimony about the "process
called kinesic interview." (6) Appellant argues that Officer Davis "testified that he watched the
video taped interview of K.H. to determine if the story of the two sides 'matched just
perfectly.'" (7) Appellant then states that "[t]he entire line of testimony was used to bolster the
investigating officers' testimony."

 Other than Officer Davis, there were two other investigating officers involved in this
case--Hal Williams and April Johnson--both of whom were police officers with the Killeen
Police Department. Officer Williams testified that he was dispatched to Darnall Hospital
where he met with Fort Hood criminal investigator Christopher Aston, (8) who advised him
that "the juvenile was sexually assaulted in the city of Killeen." Officer Williams testified
that the "criminal investigator" identified appellant as the suspect. After Officer Williams
spoke to Investigator Aston, he spoke to R.H. and K.H. and obtained a written statement
from R.H. and K.H. Afterwards, he contacted Officer Davis.

 Officer Johnson interviewed K.H. about the sexual assault and testified that K.H. (1)
did not identify anyone else other than appellant as the person who had assaulted her, and
(2) was consistent with what she had told Officer Williams.

 Here, we cannot say that the sole purpose of Officer Davis's testimony was to
convince the fact-finder that the testimony of Officers Williams and Johnson was worthy
of credit. Officer Davis's testimony incrementally tended to further establish facts of
consequence, i.e., that K.H. was sexually assaulted and that appellant was the culprit. See
Cohn, 849 S.W.2d at 820 ("evidence that corroborates another witness' story . . . , in the
sense that it has an incrementally further tendency to establish a fact of consequence,
should not be considered bolstering"). We hold that Officer Davis's testimony was more
than simple bolstering.

 b. Testimony of R.H.

 During direct-examination of R.H., the prosecutor asked her, "Has her [K.H.'s] story
ever changed about what happened to her on March 25th of 2006?" She replied, "No,
ma'am." Appellant complains this testimony constituted improper bolstering.

 Counsel did not object to this testimony and, therefore, did not preserve this
complaint for our review. See Tex. R. App. P. 33.1(a); Dixon v. State, 2 S.W.3d 263, 265
(Tex. Crim. App. 1998) (explaining that in order to preserve error, a complainant must
make timely, specific objection and obtain an adverse ruling on objection from trial court). 
Even if counsel had preserved the complaint for review, because defense counsel
impeached K.H.'s testimony, the State did not impermissibly use R.H.'s testimony to
bolster K.H.'s testimony. See Cohn, 849 S.W.2d at 820.

 2. Whether Improper Bolstering Occurred During The State's Guilt-Innocence

 Closing Argument


 Appellant argues that improper bolstering occurred in both the beginning and final
segments of the State's closing argument. During the State's beginning segment, the
prosecutor made the following remarks: "Well, ladies and gentlemen, this is the moment
of truth, and that's what I'm going to ask you to do is base your verdict on the truth because
you heard the truth from [K.H.]." Because appellant did not object and obtain any adverse
ruling (9) from the trial court, he has failed to preserve error, if any. See Cockrell v. State, 933
S.W.2d 73, 89 (Tex. Crim. App. 1996) (holding that "a defendant's failure to object to a jury
argument or a defendant's failure to pursue to an adverse ruling his objection to a jury
argument forfeits his right to complain about the argument on appeal").

 Later, in the State's beginning segment of closing argument, the prosecutor argued: 
"And, see, it's real easy to say that she's a child. Kids lie. Of course, they lie. They lie
about little things. They don't lie about the big stuff. You all know that. Anyone who has
ever been around kids know [sic] that." At this point, defense counsel objected: "Your
Honor, he's going outside of the record. There is no expert on children--" The trial court
stated, "The jury will remember the evidence that they heard." Because counsel's
objection does not comport with the issue raised on appeal, any error is not preserved for
our review. Tex. R. App. P. 33.1; Swain v. State, 181 S.W.3d 359, 367 (Tex. Crim. App.
2005) (providing that when trial objection does not comport with issue raised on appeal,
complaint not preserved for appellate review); see also Coffey v. State, 796 S.W.2d 175,
180 (Tex. Crim. App. 1990) (holding defendant's complaint regarding State's closing
argument not preserved because it did not comport with objection made at trial).

 When the State presented the final segment of its closing argument, the prosecutor
made these complained-of remarks to the jury:

 She's [K.H.] telling the truth. And, unfortunately, these crimes happen and
sometimes it's one witness.


 * * *


 That was probably the most difficult day in her life was when she had to get
up on that witness stand and tell you 12 with the man that assaulted her in
the same room. But she did it. Find him guilty, give her the credibility she
deserves, and let's move on.


Because counsel did not object to these remarks, and thus did not obtain an adverse ruling
from the trial court, he has failed to preserve error, if any, for our review. See Cockrell, 933
S.W.2d at 89. Even if counsel had objected to these remarks and obtained an adverse
ruling, the remarks did not fall outside the parameters of permissible jury argument: (1)
summation of the evidence presented at trial; (2) reasonable deductions drawn from that
evidence; (3) an answer to opposing counsel's argument; and (4) a plea for law
enforcement. Jackson v. State, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000); Moore v.
State, 233 S.W.3d 32, 37 (Tex. App.-Houston [1st Dist.] 2007, no pet.). Here, the
prosecutor's remarks were made in response to defense counsel's closing argument in
which he questioned K.H.'s credibility by telling the jury, "[T]hink about what she [K.H.] said,
she was obviously coached." (10) Therefore, the State's argument was an answer to
opposing counsel's argument. Issue two is overruled.

C. Ineffective Assistance of Trial Counsel

 In issues three and five, appellant argues he was denied the right to effective
assistance of trial counsel. See U.S. Const. amend. VI. Specifically, he contends counsel
failed to fully investigate the case, counsel's health-related problems prevented counsel
from making trial objections, and counsel failed to object to improper jury argument at the
guilt-innocence and punishment phases of trial.

 In analyzing claims of ineffective assistance under the Sixth Amendment, we apply
the two-part test announced in Strickland v. Washington, 466 U.S. 668 (1984), Ex parte
Ellis, 233 S.W.3d 324, 330 (Tex. Crim. App. 2007). Under this framework, appellant must
prove by a preponderance of the evidence that: (1) "'his counsel's performance was
deficient'"; and (2) "'there is a 'reasonable probability'--one sufficient to undermine
confidence in the result--that the outcome would have been different but for his counsel's
deficient performance.'" Id. (quoting Ex parte Chandler, 182 S.W.2d 350, 353 (Tex. Crim.
App. 2005)). The Strickland standard applies to ineffectiveness claims regarding trial
counsel's performance at both the guilt-innocence and the punishment stages of trial. 
Hernandez v. State, 988 S.W.2d 770, 772-74 (Tex. Crim. App. 1999).

 To establish deficient performance, appellant must show that "'counsel was not
acting as 'a reasonably competent attorney,' and his advice was not 'within the range of
competence demanded of attorneys in criminal cases.'" Id. (quoting Ex parte Chandler,
182 S.W.3d at 354). Appellant must overcome the "'strong presumption that counsel's
conduct fell within the wide range of reasonable professional assistance.'" Id. (quoting
Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)). Therefore, appellant must
"'overcome the presumption that, under the circumstances, the challenged action might be
considered sound trial strategy.'" Id. (quoting Miniel v. State, 831 S.W.2d 310, 323 (Tex.
Crim. App. 1992)). "The reasonableness of an attorney's performance is judged according
to the 'prevailing professional norms' and includes an examination of all the facts and
circumstances involved in a case." Id. (quoting Strickland, 466 U.S. at 688). We "'must
be highly deferential to trial counsel and avoid the deleterious effects of hindsight.'" Id.
(quoting Thompson, 9 S.W.3d at 813).

 Under the second part of the Strickland analysis, appellant "must establish that the
'constitutionally deficient performance prejudiced his defense-that is, he must show that
'there is a reasonable probability that, but for counsel's unprofessional errors, the result of
the proceeding would have been different.'" Id. (quoting Ex parte Chandler, 182 S.W.3d
at 354). "'A reasonable probability is a probability sufficient to undermine confidence in the
outcome.'" Id. (quoting Strickland, 466 U.S. at 694). "When making this determination,
any constitutionally deficient acts or omissions will be considered in light of the 'totality of
the evidence before the judge or jury.'" Id. (quoting Strickland, 466 U.S. at 695).

 "In the usual case in which an ineffective-assistance claim is made, 'the record on
direct appeal will not be sufficient to show that counsel's representation was so deficient
and so lacking in tactical or strategic decision making as to overcome the presumption that
counsel's conduct was reasonable and professional.'" Cannon v. State, 252 S.W.3d 342,
349 (Tex. Crim. App. 2008) (quoting Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App.
2002)). When defense counsel has not been afforded an opportunity to explain his or her
actions, "an appellate court should not find deficient performance unless the challenged
conduct was 'so outrageous that no competent attorney would have engaged in it.'" 
Goodspeed v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting Garcia v. State,
57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

 1. Failing To Fully Investigate


 Appellant argues counsel was ineffective because he did not review K.H.'s video-taped interview. He claims that "[h]ad defense counsel properly investigated the case, he
could have provided [appellant] with essential information which would have been valuable
for any decision he made regarding whether or not to take a plea bargain offer or to take
the case to trial."

 Ordinarily, defense counsel should make an independent investigation of the facts
of a case and not blindly rely on the veracity of his or her client's version of facts or the
witness statements in the State's file. McFarland v. State, 928 S.W.2d 482, 501 (Tex.
Crim. App. 1996), overruled on other grounds by Mosely v. State, 983 S.W.2d 249, 263
n.18 (Tex. Crim. App. 1998). "'[C]ounsel has a duty to make reasonable investigations or
to make a reasonable decision that makes particular investigations unnecessary. Id.
(quoting Strickland, 466 U.S. at 691). A decision not to investigate "'must be directly
assessed for reasonableness in all the circumstances, applying a heavy measure of
deference to counsel's judgments.'" Id. (quoting Strickland, 466 U.S. at 691). "[W]e will
not reverse a conviction unless the consequence of the failure to investigate 'is that the
only viable defense available to the accused is not advanced,'" and there is a reasonable
probability that, but for counsel's failure to advance the defense, the result of the
proceeding would have been different. Id. (quoting Strickland, 466 U.S. at 694).

 Even if we were to assume that defense counsel's failure to review K.H.'s video-taped interview fell below an objective standard of reasonableness, we are not convinced
that appellant would have accepted a plea-bargain offer, assuming one had been made,
but for his counsel's ineffective investigation. Appellant has not shown that counsel's
failure to review the videotape resulted in the failure to advance the only viable defense
available to him. We hold appellant has not established that defense counsel's failure to
investigate rendered his assistance ineffective. See Johnston v. State, 959 S.W.2d 230,
236 (Tex. App.-Dallas 1997, no pet.) (providing that an attorney's failure to investigate is
a basis for establishing ineffective assistance of counsel only when the presentation of
specific evidence would have benefitted defendant).

 2. Counsel's Health Problems


 Appellant argues that throughout the trial, his lead counsel, Mr. Ted Potter, failed
to timely object to leading questions, hearsay, and bolstering. Appellant maintains that
Potter's inability to hear, along with other health-related problems, prevented him from
making these objections. However, the record does not show that Potter had either
serious health-related problems (11) or that he was unable to hear what was said throughout
the trial. (12) The record shows that although Potter did have trouble hearing some of the
witnesses's responses, either the witnesses or the trial court repeated what Potter did not
hear. Moreover, assuming Potter was hearing impaired or had serious health problems,
appellant had the burden to show that counsel's performance was adversely affected
because of these disabilities. See Dickerson v. State, 87 S.W.3d 632, 637 (Tex. App.-San
Antonio 2002, no pet.) (despite allegations defense counsel drank alcohol before and
during trial, defendants had burden to show counsel's performance was adversely affected
because of the drinking). Thus, appellant still must carry his burden of proving he did not
receive effective assistance of counsel because counsel failed to object to leading
questions, hearsay, and bolstering. See Id. 




 a. Failure To Object To Bolstering


 Appellant complains counsel failed to object to the State bolstering its witnesses
during guilt-innocence closing argument (13) and during the case-in-chief. (14) Assuming the
prosecutor's argument and the testimony of Officer Davis and R.H. constituted improper
bolstering, appellant has failed to show that there is a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding would have been different. 
Ex parte Ellis, 233 S.W.3d at 330 (quoting Strickland, 466 U.S. at 694). Furthermore,
counsel's failure to object on this basis may have constituted sound trial strategy. We have
no evidence bearing on counsel's decision not to object on the basis of bolstering. If
counsel's reasons for his conduct do not appear in the record and there is "at least the
possibility" that the conduct could have been grounded in legitimate trial strategy, we will
defer to counsel's decisions and deny relief on an ineffective-assistance claim on direct
appeal. Garza v. State, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007).

 b. Failure To Object To Leading Questions


 Appellant directs our attention to portions of the record where defense counsel did
not object to leading questions. (15)
 Assuming defense counsel erred in failing to object to
these questions on the basis they were leading, appellant has failed to show there is a
reasonable probability that, but for counsel's unprofessional errors, the result of the
proceeding would have been different. Ex parte Ellis, 233 S.W.3d at 330 (quoting
Strickland, 466 U.S. at 694). Furthermore, because counsel's reasons for his conduct do
not appear in the record and there is "at least the possibility" that the conduct could have
been grounded in legitimate trial strategy, we defer to counsel's decisions and deny relief
on an ineffective-assistance claim on direct appeal. Garza, 213 S.W.3d at 348.

 c. Failure To Object To Hearsay


 Appellant argues that hearsay occurred "throughout the entire case" and that
counsel failed to object to Officer Davis's hearsay testimony regarding the video-taped
interview of K.H.

 i. Failure To Object To Hearsay Throughout The Entire Case


 Appellant has failed to cite to pertinent portions of the record that support this
portion of his argument on appeal. Texas Rule of Appellate Procedure 38.1(i) provides
that the "brief must contain a clear and concise argument for the contentions made, with
appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(i). An appellant
must direct the court to the specific portion of the record supporting the alleged error. 
Jensen v. State, 66 S.W.3d 528, 545 (Tex. App.-Houston [14th Dist.] 2002, pet. ref'd)
(citing Huerta v. State, 933 S.W.2d 648, 650 (Tex. App.-San Antonio 1996, no pet.)). 
Because this portion of appellant's argument contains no citations to the record, he has
waived appellate review of this complaint. See Tex. R. App. P. 38.1(i); Jensen, 66 S.W.3d
at 545 ("Because appellant's argument on this point of error contains no citations to the
record, he has waived appellate review of his complaint."); Huerta, 933 S.W.2d at 650
(appellant must direct court to specific portion of record supporting complained--of error);
Lape v. State, 893 S.W.2d 949, 953-54 (Tex. App.-Houston [14th Dist] pet. ref'd) (holding
that nothing preserved for review because defendant's brief did not direct appellate court
to proper place in record where alleged error was presented).

 ii. Failure To Make Hearsay Objections To Officer Davis's Testimony Regarding
K.H.'s Interview


 Appellant argues that counsel was ineffective for failing to make hearsay objections
to Officer Davis's testimony about K.H.'s video-taped interview. We have previously
quoted this testimony in issue two.

 Hearsay is "a statement, other than one made by the declarant while testifying at
the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tex. R.
Evid. 801(d). Hearsay is inadmissible unless it falls within an exception created by statute
or rule. Tex. R. Evid. 802. The rules define "statement" as "(1) an oral or written verbal
expression or (2) nonverbal conduct of a person, if it is intended by the person as a
substitute for verbal expression." Tex. R. Evid. 801(a). 

 With respect to Officer Davis's testimony about the demeanor exhibited by K.H.
during her video-taped interview, K.H.'s demeanor would be hearsay only if it constituted
a statement. Nothing in this case shows K.H.'s demeanor during her interview was
"intended . . . as a substitute for verbal expression." The rest of Officer Davis's testimony
about what K.H. said during the interview is hearsay because it is based upon K.H.'s out-of-court statements. See Tex. R. Evid. 801(d). However, appellant has failed to show that
there is a reasonable probability that, but for counsel's unprofessional errors, the result of
the proceeding would have been different. Ex parte Ellis, 233 S.W.3d at 330 (quoting
Strickland, 466 U.S. at 694). Also, the record is silent concerning why defense counsel did
not lodge any hearsay objections to that testimony. Accordingly, the record before us is
insufficient to discern whether counsel's conduct was a product of reasonable trial strategy.

 3. Failing To Object To The Prosecutor's Guilt-Innocence Closing Argument


 During the final segment of the State's guilt-innocence closing argument, the
prosecutor argued, in relevant part:

 But we know that sex offenses happen. We know that they happen here in
Bell County. Deb Kleypas just herself has done 600 examinations. These
crimes happen, and we have to tell our children in Bell County that we are
going to believe them and we are going to support them and we are at least
going to give those scars a chance to heal. . . .


Appellant claims that counsel should have objected to the italicized portion of this
argument.

 Because the evidence did not show that children are always truthful when accusing
someone of sexually abusing them, or that all children are scarred from sexual abuse, the
prosecutor's remarks did not constitute either a summation of the evidence presented at
trial or a reasonable deduction drawn from that evidence. Furthermore, the argument was
not a proper plea for law enforcement nor was it in response to counsel's argument.
Therefore, the remarks fell outside the permissible areas of proper jury argument. See
Jackson, 17 S.W.3d at 673. Nevertheless, even when the argument exceeds the
permissible bounds of approved jury argument, "such will not constitute reversible error
unless, in light of the record as a whole, the argument is extreme or manifestly improper,
violative of a mandatory statute, or injects new facts harmful to the accused into the trial
proceedings. Wesbrook v. State, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000); Phillips v.
State, 701 S.W.2d 875, 892 (Tex. Crim. App. 1985). Here, in light of the record as a
whole, the remarks were neither (1) extreme or manifestly improper, (2) violative of a
mandatory statute, nor (3) injected new facts, harmful to appellant. Thus, appellant has
failed to show that there is a reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different. Ex parte Ellis, 233 S.W.3d
at 330 (quoting Strickland, 466 U.S. at 694).

 4. Failing To Object To The Prosecutor's Punishment Phase Closing Argument


 Appellant argues counsel was ineffective because he did not object to the
prosecutor's closing argument with respect to the application of parole law. In accordance
with statute, the jury received the proper parole instructions (16) in the punishment charge. 
During closing argument, the prosecutor argued as follows:

 Now, when we are talking about the Charge [sic], the most common
question we get is, "What is the difference between 99 and life?" Well, let
me put it this way. Here is 5 years, here is 60 years, and then between here
is 60 and 99. If you give anywhere from 5 to 99 years, the maximum
sentence he will serve before being eligible for parole, eligible, is 30 years. 
In other words, if you give him 75, he's not going to do 37-1/2. If you give
him 99, he's not going to do 45 because, first, eligibility for parole is basically
cut off at 60. Okay? If you give him a life sentence, he's eligible for parole
after 30 years. He would be 57 years old if he made it, quite able to carry out
what he wasn't able to do past 30 years.


Counsel did not object to this argument.

 Even if counsel had preserved this complaint, we do not believe the argument is
improper. See Taylor v. State, 233 S.W.3d 356 (Tex. Crim. App. 2007). In Taylor, the
punishment charge gave the jury the parole instructions that the jury received in the case
before us. See id. at 358. After the trial court charged the jury, the prosecutor argued, in
relevant part:

 Now, let me stop and talk to you about the charge for just a moment so that
you can-you probably do understand already but the Judge mentioned to you
that as far as parole eligibility that the defendant becomes eligible for parole
after he serves one-half of the sentence imposed or thirty years. Let me
explain that to you for just a moment. Let's say a sentence of 40 years-


 * * *


 A 40-year sentence means the defendant becomes eligible for parole after
serving 20 years.


 * * *


 A 60-year sentence means he becomes eligible after serving 30 years. A
sentence of life or 75 still means he becomes eligible after 30 years. So,
why would I ask you for life and a $10,000 fine if he becomes eligible at the
same point?


Id. The jury sentenced the defendant to fifty years in prison and a $10,000 fine. Id. at 359. 
On appeal, the defendant asserted the argument was improper, but the court of criminal
appeals disagreed, stating that the prosecutor "did not convey any information beyond
what was properly contained in the charge when he explained how the parole eligibility
rules set out in the charge worked with forty, sixty and seventy-five year sentences. The
explanation simply ensured that the jury understood the language set out in the
instructions." Id. at 359.

 Likewise, in this case, the prosecutor did not convey any information beyond what
was properly contained in the charge when he explained how the parole eligibility rules set
out in the charge worked with respect to seventy-five, ninety-nine and life imprisonment. 
The only remaining part of the prosecutor's argument that might have been objectionable
was the statement at the end of the colloquy: "He would be 57 years old if he made it,
quite able to carry out what he wasn't able to do past 30 years." Assuming that this part
of the argument was improper, it was harmless because appellant was sentenced to only
fifty years. See id. (prosecutor's argument at end of colloquy: "So, why would I ask you
for life and a $10,000 fine if he becomes eligible at the same point?" held harmless
because defendant was sentenced to only fifty years).

 Moreover, appellant's argument that the claimed deficiency resulted in a higher
sentence is speculation. The punishment range for aggravated sexual assault of a child
is five to ninety-nine years or life in prison and a fine of up to $10,000. Tex. Penal Code
Ann. §§ 22.021(e), 12.32(a), (b) (Vernon 2003 & Supp. 2008). After hearing the
punishment evidence that appellant had sexually assaulted another person prior to
sexually assaulting K.H., the jury assessed a fifty-year sentence and no fine, which is in
the middle of the punishment range. Based on the record before us, we conclude
appellant has not met his burden to show either deficient performance or that the result
would have been different had counsel objected, asked the trial court to instruct the jury
to disregard the prosecutor's statements and to have moved for a mistrial. Issues three
and five are overruled.

D. Denial Of Mistrial

 In issue four, appellant argues the trial court erred in denying his motion for a
mistrial after sustaining his objection to statements the prosecutor made during guilt-innocence closing argument. During voir dire examination, the trial court excused the
venire members from the courtroom so that six prospective jurors could speak to the court
and to the attorneys for both sides in private. Five of these prospective jurors stated that
they were either sexually abused, had a family member who was sexually abused, or had
lived with a sex offender. None of the six prospective jurors were seated on the jury. 
During guilt-innocence closing argument, the prosecutor made the following comment (17) to
the jury:

 So the question is, the 12 of you all, she's placed her trust in you. 
Now her trust has been broken by that man, and she is going to carry that
scar permanently with her for the rest of her life. You heard how hard it was
for six [sic] of your own jury panel to talk about sex. They had to approach
the bench and talk to the lawyers in private. Those are adults that are
permanently scarred by things that happened in their past.


At this point, defense counsel objected that the argument was "outside the record." The
trial court sustained the objection. When counsel asked the trial court "to instruct the jury
to disregard," the trial court replied, "The jury will disregard." The trial court denied
counsel's request for a mistrial.

 "A mistrial is the trial court's remedy for improper conduct that is 'so prejudicial that
expenditure of further time and expense would be wasteful and futile.'" Hawkins v. State,
135 S.W.3d 72, 77 (Tex. Crim. App. 2004) (quoting Ladd v. State, 3 S.W.3d 547, 567 (Tex.
Crim. App. 1999)). Only extreme circumstances, when the prejudice is incurable, require
a mistrial. Id. In cases when the trial court sustains an objection and instructs the jury to
disregard, but denies a motion for mistrial, the proper issue is whether the trial court
abused its discretion by denying the mistrial. Id. at 76-77. A trial court abuses its
discretion when its decision falls outside the zone of reasonable disagreement. Casey v.
State, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). With respect to jury argument that
falls outside the four permissible areas, (18) the factors we consider in determining whether
the trial court abused its discretion in denying a mistrial include: (1) severity of the
misconduct (magnitude of the prejudicial effect of the prosecutor's remarks); (2) measures
adopted to cure the misconduct (efficacy of the trial court's cautionary instruction); and (3)
the certainty of conviction absent the misconduct (the strength of the evidence supporting
conviction). Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998); Tucker v.
State, 15 S.W.3d 229, 237-38 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd) (applying
Mosley factors to determine if improper guilt-innocence final argument constituted
reversal). (19) We consider the argument in the context in which it appeared. Denison v.
State, 651 S.W.2d 754, 761 (Tex. Crim. App. 1983); Ayala v. State, 267 S.W.3d 428, 436
(Tex. App.-Houston [14th Dist.] 2008, no pet.).

 1. First Mosley Factor-Severity Of The Misconduct

 The prosecutor was apparently trying to make a plea for law enforcement by
explaining to the jury how sexual abuse affected the victim. The prosecutor stated that
K.H. "is going to carry that scar[ (20)] permanently with her for the rest of her life." Then, she
reminded the jury about what happened at voir dire, stating: "They had to approach the
bench and talk to the lawyers in private. Those are adults that are permanently scarred
by things that happened in their past." However, because the five prospective jurors spoke
to the trial court and the attorneys outside the presence of the other venire members, and
because the record does not show that the five prospective jurors were "permanently
scarred," the prosecutor exceeded the bounds of permissible jury argument. See Jackson,
17 S.W.3d at 673. Nevertheless, the prosecutor did not repeat this argument, and we do
not find the improper argument to be severe. See Geuder v. State, 76 S.W.3d 133, 138
(Tex. App.-Houston [14th Dist.] 2002), overruled on other grounds, 115 S.W.3d 11 (Tex.
Crim. App. 2003) (finding mistrial not necessary despite the statement "[w]ho knows how
many other people . . . [defendant] has stolen from in other counties" by prosecutor in guilt-innocence phase).

 2. Second Mosley Factor-Measures Adopted To Cure The Misconduct


 "In the vast majority of cases in which argument is made . . . which has no relevance
to any material issue in the case and carries with it some definite potential for prejudice to
the accused," the court of criminal appeals has relied upon "an appellate presumption that
an instruction to disregard . . . will be obeyed by the jury." Gardner v. State, 730 S.W.2d
675, 696 (Tex. Crim. App. 1987). Furthermore, "[w]hen counsel asks for a particular
instruction and the trial court accedes to the request by saying 'the jury is so instructed,'
that instruction will in most cases be considered effective to cure the harm from an
improper argument." Hawkins, 135 S.W.3d at 84. Here, the trial court immediately
sustained the objection and instructed the jury to disregard. We find this curative measure
sufficient. See Hawkins, 135 S.W.3d at 84. 


 

 3. Third Mosley factor-Certainty Of Conviction Absent The Misconduct


 K.H. testified that appellant touched her, "In my vagina" and that appellant "moved
it [his finger] around in there." When the prosecutor asked her, "And are you talking about
your vagina?", she said, "Yes, ma'am." R.H. testified that K.H. said that appellant touched
her "In my private" and that K.H. "told me that he [appellant] had put his finger in her
vagina." Deborah Kleypas testified that she found "redness" inside K.H.'s labia majora. 
When the prosecutor asked Kleypas, "And was that [redness], based on your training and
experience, consistent or inconsistent with a male inserting his fingers into her [K.H.'s]
vagina?", she replied, "Her redness could be consistent with her history about what
happened." Thus, absent the improper comments, the certainty of conviction is strong.

 After balancing the three factors, we hold that any possible harm caused by the
argument was cured by the trial court's instruction. Because that instruction is presumed
effective, the trial court did not abuse its discretion by denying the motion for mistrial. See
Ladd, 3 S.W.3d at 567 (grant of a mistrial is required only "when error is so prejudicial that
expenditure of further time and expense would be wasteful and futile"). Issue four is
overruled.

III. Conclusion


 We affirm the trial court's judgment. 


 ROSE VELA 

 Justice



Do not publish.

Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and

filed this 12th day of February, 2009.
1. See Tex. Penal Code Ann. § 21.11 (Vernon 2003).
2. Section 21.01(2) of the penal code states: "'Sexual contact' means, except as provided by Section
21.11, any touching of the anus, breast, or any part of the genitals of another person with intent to arouse or
gratify the sexual desire of any person." Tex. Penal Code Ann. § 21.01(2) (Vernon Supp 2008).
3. The State did not introduce the video-taped interview into evidence.
4. On cross-examination, defense counsel asked K.H.:


 Q. All right. And your mother was sitting there in the--I believe the living room while he
[appellant] messed around in your private part; is that right?


 A. Yes, ma'am. Yes, sir.


 Q. And she didn't notice it?


 A. No, sir.


 Q. Okay. Did she ever stand up and go to another room while this was happening or--


 A. No, sir.


 Q. How long did this--was he playing around with it?


 A. I don't know.


 Q. Okay. Well, more than--do you know what a minute Can [sic] you tell me what a
minute is?


 A. Sixty seconds.


 Q. All right. Do you think it is more than 60 seconds[?]

 

 A. Yes, sir.


 Q. Was it, like, five minutes?


 A. I wouldn't know. 
5. On cross-examination, defense counsel asked K.H.:


 Q. Okay. Now you also got mad at him [appellant] one time, didn't you, when he was
scolding you? Do you know what "scolding" means?


 A. Yes, sir.


 Q. He fussed at you about something once, didn't he?


 A. No, sir.


 Q. Never?


 A. No, sir. 
6. Officer Davis described the kinesic interview process as follows:

 

 [I]n the kinesic interview process, what you're trained to do is basically set
a norm on the individual that you are talking to. Most of us are parents in
here so, I guess, the easiest way is to use a parenting example. We know
when our children are not telling us the truth because we have lived with
them and we--you know, you can just look at their eye movement and say,
okay, this child, my child is not telling me the truth and this is why. Well,
when we do kinesic interview techniques, you will watch a person. You
establish a norm with them, and then when you start talking to them and
hitting the high point about an offense or an incident that occurred, some of
their body language is going to change. And that is kind of just a highlight
of that.


When the prosecutor asked him, "So it's, basically for the laymen, you examine their body language . . . make
sure that it's appropriate with the story you are being told[?]", he replied, "Yes, sir."
7. This statement is partially correct. Officer Davis watched K.H.'s video-taped interview, but he did not
testify that he watched it to determine if the story of the two sides "'match just perfectly.'" Rather, when the
prosecutor asked Officer Davis to "tell the jury briefly what kind of steps you go through to investigate a case
before you bring it for review to the District Attorney's Office[,]" he stated, in relevant part:


 Well, what I instruct my detectives to do and what I have been trained to do, the first
thing we do is we get a statement from the victim as to what took place. If it's a sexual
offense, then we request that a SANE exam is done. From there we try to get a statement
from the person who is accused because in any type of criminal investigation there is [sic]
two sides to every story and the stories should match just perfectly together. . . . 
8. Christopher Aston did not testify.
9. "To preserve error in prosecutorial argument, a defendant must pursue to an adverse ruling his
objections to jury argument." Archie v. State, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). "The essential
requirement is a timely, specific request that the trial court refuses." Young v. State, 137 S.W.3d 65, 69 (Tex.
Crim. App. 2004). Even if the error was such that it could not be cured by an instruction to disregard, the
defendant must object and request a mistrial to preserve the error. Mathis v. State, 67 S.W.3d 918, 927 (Tex.
Crim. App. 2002).
10. When the prosecutor finished the beginning segment of his closing argument, defense counsel
made his closing argument, stating in relevant part:


 We've got a nine-year-old girl who got on the witness stand--and she's just as pretty as a
picture--got on the witness stand and gave some testimony that if you listen to it, think about
what she said, she was obviously coached.


 Do you remember the last question the Prosecution asked of her was, Why are you
doing this? It was something to the effect of that justice be done or that he can't do this to
another person. Is that the word of a nine-year-old child? Think about that.
11. Appellant directs our attention to the following portions of the record:


 First, during R.H.'s cross-examination at guilt-innocence, Potter began to ask her a question and then
told the trial court, "I'm sorry, Your Honor, losing my voice." After co-counsel asked her a question, Potter
resumed cross-examination without losing his voice.


 Second, after both sides rested and closed at guilt-innocence, Potter told the trial court, "If the State
could leave a copy of the proposed Charge [sic] right here. I can go eat some lunch and come back." In
response the prosecutor stated, "Why don't you stick around five minutes and then you will have it?" To which
Potter replied, "Because you're going to see me go into an eating fit."


 Third, during the punishment phase, the State called K.B., who testified appellant had sexually
assaulted her in 2002. After the alleged assault, K.B. gave a statement to the police. During cross-examination of K.B., Potter wanted to question her about this statement. Potter told the trial court, "I'm having
a health problem right now, but if I could have Mr. Byrd [co-counsel] walk up and approach the witness. . . ." 
Potter did not specify the nature of his health problem.
12. Appellant directs our attention to the following portions of the record:


 First, during K.H.'s direct-examination, Potter told the trial court he did not hear K.H.'s answer to a
question. When the prosecutor told K.H. to "say it a little bit louder," K.H. repeated her answer, and Potter
made no complaint about not hearing her. On another occasion, Potter told the trial court, "I can't understand
the last few words she [K.H.] said." The trial court repeated what K.H. had said and told K.H. to "[s]peak up,
please." Potter cross-examined K.H. without indicating that he could not hear her answers to his questions.


 Second, during direct-examination of R.H., the trial court sua sponte told her, "Would you get a little
closer to the mike, please, ma'am." At this point, the prosecutor told her, "Both you and your daughter [K.H.]
are soft-spoken." Later during R.H.'s direct-examination, Potter told the trial court that he did not hear her "last
response." The trial court told R.H. to "[p]lease speak up, ma'am." She repeated her answer, and Potter
made no complaint about not hearing her. He cross-examined R.H., without indicating that he could not hear
her answers to his questions.


 Third, while on direct-examination, Officer Hal Williams testified, in relevant part, that "I then called
the Y.S.U. investigator, Sargeant Davis." At that point, Potter told the trial court, "I couldn't hear what kind of
investigator he said, Your Honor?" The prosecutor asked Officer Williams, "What does 'Y.S.U.' stand for?" 
Officer Williams replied, "Youth Services Investigator for the Killeen Police Department." Mr. Potter made no
complaint about not hearing him. The defense did not cross-examine Officer Williams.


 Fourth, during the direct-examination of Deborah Kleypas, the prosecutor asked her, "And was that,
based on your training and experience, consistent or inconsistent with a male inserting his fingers into her
[K.H.'s] vagina?" She replied, "Her redness could be consistent with her history about what happened." At
this point, Potter told the trial court, "I couldn't hear what she said, Your Honor." The trial court replied, "If you
want to, Mr. Potter, you can scoot up here and sit right by the Kleenex box, right there, and that way you will
hear better." After this, the prosecutor asked Ms. Kleypas, "So it was consistent with her story." She replied,
"Yes, sir, it was." Potter made no complaint about not hearing her. He cross-examined her without indicating
that he could not hear her answers to his questions.


 Fifth, with respect to the direct-examination of Officers April Johnson and Reese Davis, Potter did not
tell the trial court that he could not hear their testimony. Officer Johnson was not cross-examined. Potter
cross-examined Officer Davis without telling the trial court he could not hear Officer Davis's responses to his
questions.
13. This complaint concerns the prosecutor's closing remarks quoted in issue two.
14. This complaint concerns the prosecutor's direct-examination of Officer Davis and R.H.
15. In the first instance, the prosecutor was questioning K.H. about what she did after appellant had
sexually assaulted her: Prosecutor: "I guess your main thought was to get away from him." She replied,
"Yes, ma'am." Then, when the prosecutor asked her, "And that's what you did?", she replied, "Yes, ma'am."


 In the second instance, the prosecutor was questioning R.H. about the events leading up to the sexual
assault. Prosecutor: "After he [appellant] worked on the car, what else happened that day?" She replied that
appellant played ball with her son, helped her finish weed eating, and "then we hung out and talked." 
Afterwards, she invited him to stay for dinner. 


 In the third instance, the prosecutor offered into evidence the written report that Deborah Kleypas
prepared with respect to her examination of K.H. After the trial court admitted the report into evidence, the
prosecutor asked Kleypas: "Now, if a child had like a minor cut or something like that, you probably wouldn't
even bother to put that down, would you?" She replied, "At times. It depends on if it is bruising and if we want
to educate and help them take care of it, their parents, then we will document those type of findings." The
prosecutor then asked her, "And just about every kid comes in with bumps and bruises." She replied, "Yes,
they do, especially in certain areas."

16. Article 37.07, section 4(a) provides, in relevant part:


 It is also possible that the length of time for which the defendant will be imprisoned
might be reduced by the award of parole.


 Under the law applicable in this case, if the defendant is sentenced to a term of
imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or thirty (30) years, whichever is less, without consideration of
any good conduct time he may earn. Eligibility for parole does not guarantee that parole will
be granted.


 It cannot accurately be predicted how the parole law and good conduct time might
be applied to this defendant if he is sentenced to a term of imprisonment, because the
application of these laws will depend on decisions made by prison and parole authorities.


 You may consider the existence of the parole law and good conduct time. However,
you are not to consider the extent to which good conduct time may be awarded to or forfeited
by this particular defendant. You are not to consider the manner in which the parole law may
be applied to this particular defendant.


See Tex. Code Crim. Proc. Ann. art. 37.07, § 4(a) (Vernon Supp. 2008).
17. Appellant complains about the italicized comments.
18. See Jackson v. State, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000).
19. We do not find that the prosecutor's remarks impinged upon appellant's constitutional rights. See
Tucker v. State, 15 S.W.3d 229, 237 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd) (finding the trial court's
erroneous ruling regarding improper comments made during jury argument involved nonconstituional error);
Ortiz v. State, 999 S.W.2d 600, 605-06 (Tex. App.-Houston [14th Dist.] 1999, no pet.) (finding the trial court's
error in overruling defendant's repeated objections to arguments outside the record amounted to
nonconstituional error). We therefore use the Mosley factors to determine if the trial court in this case should
have granted a mistrial. 
20. That K.H. would be emotionally scarred from an aggravated sexual assault is a reasonable
deduction from the evidence in light of R.H.'s testimony that because of the experience: (1) K.H. required
counseling; (2) K.H. "was emotional all the time;" and (3) the assault affected K.H.'s relationships with adult
males. See Williams v. State, 732 S.W.2d 762, 765 (Tex. App.-Beaumont 1987, no pet.) (noting that victim
would be emotionally scarred from aggravated sexual assault was reasonable deduction from evidence that
victim required counseling). One may argue reasonable deductions from the evidence. See Cannady v.
State, 11 S.W.3d 205, 213 (Tex. Crim. App. 2000).